UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIX HASSON,<br>Plaintiff,<br>-v-<br>MAXIMILLIAN KRCHMAR,<br>Defendant. | 26cv114 (DLC)<br><br>OPINION AND ORDER |

APPEARANCES:

For plaintiff Felix Hasson:

Matthew Mainen
National Jewish Advocacy Center
41 W Highway 14, Suite 2078
Spearfish, SD 57783

For defendants Maximillian Krchmar:

Michael H. Ansell
NextGen Counsel LLC
9 Egbert Avenue
Morristown, NJ 07960

DENISE COTE, District Judge:

Felix Hasson was excluded from an in-person video game tournament that took place in New York City in 2024 after another participant complained to the tournament hosts about Hasson's online posts regarding the Israel-Palestine conflict. Hasson has sued Maximillian Krchmar, a tournament organizer, alleging that his exclusion violated federal, state, and local antidiscrimination law. Krchmar moves to dismiss the claims for

failure to state a claim. For the following reasons, the motion is granted.

## **Background**

The following facts are alleged in the Complaint, its attachments, and documents integral to its claims.[1] This Opinion summarizes only the facts necessary to decide this motion.

Plaintiff Felix Hasson is a competitive video game player who specializes in the game Super Smash Brothers Ultimate ("Smash"). Smash is a platform-based game made by Nintendo in which players fight each other using video game characters, each of which has its own unique abilities and weapons. There are competitive online and in-person Smash tournaments.

Hasson began competing in Smash tournaments in 2015 and, to date, he estimates that he has won about $7,000 in prize money, gaming equipment, and other items. As of December 2023, Hasson was registered to compete in the 2024 Let's Make Big Moves ("LMBM") Smash tournament in New York City. Hasson had paid a $110 registration fee in exchange for the ability to compete in the tournament and the opportunity to purchase tournament

[1] In reviewing a motion to dismiss for failure to state a claim, the court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020) (citation omitted).

souvenirs. Defendant Maximillian Krchmar was one of three Tournament Organizers ("TO") for the 2024 LMBM tournament.

Hasson is also Jewish-American and identifies as a Zionist, which he defines as "an adherent of the international movement originally for the establishment of a Jewish national or religious community in Palestine and later for the support of modern Israel." He contends that his Zionism "is both a sincerely held religious belief . . . and otherwise inseparable from his Jewish race and national origin."

From 2021 to 2023, Hasson published a number of public posts on X (formerly known as Twitter) related to Israel, the Israel Defense Forces ("IDF"), and the Israel-Palestine conflict. The following five tweets are relevant to this action:

- A September 13, 2021 tweet (the "Donda tweet") that stated, "in the west bank bumpin carti . . . i got to introduce these settlements to off the grid" and attached an image of the Greek god Prometheus giving man fire. Hasson later explained that this tweet was a joke about introducing a newly released album, Donda by Kanye West, to Jewish settlements in the West Bank.
- A July 27, 2022 tweet (the "Chad tweet") that attached an image of a "Chad," or a man with an exaggerated square

jaw intended to symbolize confidence and strength, in front of an Israeli flag. The tweet itself stated, "based idf."

- A January 19, 2023 tweet (the "Bomb tweet") responding to a graph of the most popular Smash characters in every country, which stated: "would be mad funny if the most popular character [in Palestine] was snake or any other character that pulls bombs."
- An October 7, 2023 tweet (the "October 7 tweet") that stated, in response to that day's attacks in Israel: "gaza got something big coming their way for sure."
- A December 20, 2023 tweet (the "LMAO tweet") that stated, "LMAOOOO," an expression used to denote laughter, in response to an image of two tweets from a user based in "Gaza - Palestine." The first tweet, dated October 7, 2023 and labeled in the image as "How it started," read: "The event is great and scary, but by God, my happiness is limitless." The second tweet, dated December 16, 2023 and labeled in the image as "How it's going," read: "I Lost everything."

On December 20, 2023, Jonathan Mendez, another registrant in the 2024 LMBM tournament in New York City and a non-party in this action, posted a series of tweets directed to defendant

Krchmar and the other two LMBM TOs, Cyrus Gharakhanian and Geoffrey Tirrell, about plaintiff Hasson's tweets and the Israel-Palestine conflict:

- Mendez's first tweet attached screenshots of Hasson's Donda, Chad, Bomb, and October 7 tweets and asked, "why is this racist zionist weasel allowed at your events?"
- Mendez's second tweet read:

  > how is any Palestinian supposed to feel safe at your major when people who relish in and cheer for the complete extermination of their friends and family are allowed in the same space? Genuine question
  >
  > this goes beyond smashy bros, LMBM should be a safe space for everyone

- Mendez's third tweet attached a screenshot of Hasson's LMAO tweet and stated: "most recent reply on his account man not even trying to hide it."

That night, at 8:55 p.m., the three TOs had a short discussion in a Facebook group chat about whether to exclude Hasson from the 2024 LMBM tournament. After TO Tirrell posted a screenshot of a confirmation screen to remove Hasson from the tournament, defendant Krchmar responded, "Yeah I'm with it." One minute later, at 8:56 p.m., TO Tirrell responded to Mendez's first tweet and publicly confirmed that Hasson "has been removed."

Later that night and after Hasson was removed, TO Gharakhanian sent screenshots of direct messages Hasson sent to him in the same Facebook group chat. The messages read, in relevant part:

> as a jew i have a strong allegiance to my ethnic homeland and i am very much on the side of my people during this war. I have many friends and family currently fighting in the IDF and I take whats happening over there very seriously. I am a zionist and a proud supporter of the state of Israel, and that opinion should not have any effect on my ability to compete in tournaments. If you have any concerns over possible safety issues, I can assure you that I am not a danger to anyone nor have I ever, and I treat everyone with the same respect that is given to me in return. You can ask any player or TO that has ever spoken with me and they would all say the same thing.
>
> ive been removed from LMBM for being a "zionist weasel" and if thats not a crazy sentence then i dont know what is
>
> I ask you to please reconsider the decision to remove me from LMBM, regardless of what your thoughts are on the war in Israel. smash has nothing to do with my support for my people in the fight against terrorism.

(Emphasis added.) Defendant Krchmar responded to the other two TOs, "Homie is definitely a Zionist weasel."

This is not the first action Hasson has filed based on his exclusion from the 2024 LMBM New York City tournament. On December 16, 2024, Hasson filed an action in this Court (Hasson v. Luminosity Gaming (USA) LLC, et al., 24cv9693) against many

defendants based on his exclusion from various Smash tournaments across New York, New Jersey, and Connecticut, including the 2024 LMBM tournament. This initial complaint did not name Krchmar as a defendant. After filing three amended complaints (the first of which added Krchmar as a defendant), Hasson voluntarily dismissed his claims against all of the defendants, some with prejudice and others without prejudice. Claims against defendant Krchmar were dismissed without prejudice on November 10, 2025, whereas claims against the final defendant, TO Tirrell, were dismissed with prejudice on January 20, 2026, closing the action.

On January 7, 2026, Hasson filed this action against Krchmar only. This was less than two months after he had dismissed his claims against Krchmar in the earlier-filed action. The Complaint alleges that Krchmar violated federal, state, and local antidiscrimination law by excluding Hasson from the 2024 LMBM tournament. Specifically, the Complaint alleges that Krchmar excluded Hasson "on the basis of [Hasson's] Jewish racial, religious, and national origin identity" in violation of Title II of the Civil Rights Act of 1964 ("Title II"), §§ 1981 and 1982 of the Civil Rights Act of 1866 ("§ 1981" and "§ 1982," respectively), § 1985 of the Civil Rights Act of 1871 ("§ 1985"), various state and local statutes, and New York common

law. The Complaint also identifies eleven individuals who, as of its filing, Krchmar was permitting to participate in the 2026 LMBM tournament despite Hasson's complaints to Krchmar that the individuals have bullied and harassed him online for being a Zionist, and pose a safety risk to him. Hasson seeks damages and injunctive relief.

The 2026 LMBM tournament was held January 23-25, 2026, approximately two weeks after Hasson filed the Complaint in this action. It is undisputed that Hasson was permitted to compete in the 2026 tournament and that Krchmar has agreed to allow Hasson to participate in future tournaments.[2]

On March 25, 2026, Krchmar moved to dismiss the Complaint for failure to state a claim. Hasson opposed the motion on April 10.[3] Krchmar filed his reply on April 17, and the motion became fully submitted.

[2] On September 18, 2025, in connection with Hassan's first-filed action, Krchmar agreed to a stipulated preliminary injunction that prohibited him "from banning or otherwise interfering with Plaintiff Hasson's admission into video game tournaments on account of Mr. Hasson's Jewish identity, including his Zionism and related support of and affinity to Israel and its military." Hasson later advised Krchmar that he would no longer pursue a motion for a preliminary injunction, so the stipulated injunction was never entered.

[3] Hasson was given an opportunity to amend the Complaint by April 10 and warned that he would be unlikely to have a further opportunity to do so.

**Discussion**

Krchmar's motion to dismiss argues that the Complaint fails to state any violation of federal law. He is correct. The Complaint fails to state a Title II claim because it does not plausibly allege facts that support prospective relief, and it fails to state claims under §§ 1981, 1982, and 1985 because it does not sufficiently allege that Krchmar intended to discriminate against Hasson on the basis of race. The Court declines to exercise supplemental jurisdiction over the remaining claims.

To defeat a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678). In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the

complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted).

## I. Title II

Title II of the Civil Rights Act of 1964 provides that:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). The overriding purpose of Title II was to remove "the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." Daniel v. Paul, 395 U.S. 298, 307-08 (1969) (quoting H.R. Rep. No. 88-914). Critically, plaintiffs may only seek prospective relief, such as an injunction, under Title II. 42 U.S.C. § 2000a-3(a); see Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under that Title, he cannot recover damages."). Hasson seeks an injunction requiring Krchmar to "permit [Hasson] to participate in the tournaments for which [Krchmar] is a TO" and to "promptly and adequately respond to any antisemitic harassment [Hasson] faces at [Krchmar's] tournaments."

Krchmar moves for dismissal of the Title II claim on several grounds, including that Hasson lacks standing to pursue

the injunction he requests under Title II.[4] "To establish standing to obtain prospective relief, a plaintiff must show a likelihood that he will be injured in the future." Carver v. City of New York, 621 F.3d 221, 228 (2d Cir. 2010) (citation omitted). "That is, a plaintiff must demonstrate a certainly impending future injury." Marcavage v. City of New York, 689 F.3d 98, 103 (2d. Cir. 2012) (citation omitted). In doing so, "a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought." Id.

Hasson has failed to allege facts sufficient to show a likelihood that he will be injured by Krchmar in the future, let alone a "certainly impending future injury." It is undisputed

[4] To be clear, Krchmar contends that Hasson lacks statutory standing, not Article III standing. Article III standing is a constitutionally imposed limit on a federal court's "power to hear a case." Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247, 254 (2010) (citation omitted). By contrast, statutory standing is nonjurisdictional and "does not implicate . . . the court's statutory or constitutional power to adjudicate a case." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 128 n.4 (2014) (emphasis in original). Instead, it is "simply a question of whether the particular plaintiff has a cause of action under the statute." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016) (quoting Lexmark, 572 U.S. at 128). Therefore, a lack of statutory standing requires dismissal for failure to state a claim, whereas a lack of Article III standing requires dismissal for lack of subject matter jurisdiction.

that Krchmar has agreed to permit Hasson to participate in any future tournaments for which he is a TO and, consistent with that promise, Krchmar permitted Hasson to compete in the 2026 LMBM tournament earlier this year. It is true that a defendant's voluntary cessation of a challenged practice does not always render a case moot. See Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 603-04 (2d Cir. 2016). Here, however, the Complaint fails to plausibly plead that the allegedly wrongful behavior -- Hasson's exclusion from a 2024 tournament -- can "reasonably be expected to recur." Id. at 604 (citation omitted).

II. Sections 1981 and 1982

The next two claims subject to this motion to dismiss are directed against intentional discrimination based on a person's race. Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981. Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Hasson contends that

his exclusion from the 2024 LMBM tournament violated § 1981 because he initially registered via contract and violated § 1982 because he was no longer able to purchase tournament souvenirs.

"Sections 1981 and 1982 reach only purposeful discrimination." Francis v. Kings Park Manor, Inc., 992 F.3d 67, 80 (2d Cir. 2021) (citation omitted). "Therefore, to state a claim under either Section 1981 or 1982 a plaintiff must allege facts supporting a defendant's intent to discriminate against him on the basis of his race." Id. (citation omitted). Discrimination against a person based on their identity as a Jew would clearly satisfy that requirement. Indeed, Krchmar acknowledges that Jewish people constitute a "protected class." Here, however, the Complaint does not sufficiently allege that Krchmar intended to discriminate against Hasson on the basis of race when he agreed to exclude him from the tournament.

Krchmar argues that the Complaint, when read in the context of the messages that are integral to it, alleges that Krchmar agreed to exclude Hasson in response to Mendez's messages, and specifically Mendez's concern that Palestinians would not "feel safe" at the tournament given the views Hasson expressed in his tweets. Krchmar is correct. The Complaint, including the sequence of messages on which it relies, does not plausibly allege that Krchmar intentionally discriminated against Hasson

on the basis of his race. Indeed, Krchmar's reading of the Complaint, in which he agreed to exclude Hasson in response to race-neutral safety concerns, is reinforced by Hasson's own messages to TO Gharakhanian after he learned of his exclusion. While seeking reentry into the 2024 LMBM tournament, Hasson recognized the "possible safety issues" and assured TO Gharakhanian "that I am not a danger to anyone."

As Hasson implicitly recognizes, his §§ 1981 and 1982 claims must be dismissed if the Complaint merely pleads that Hasson was excluded because he was a Zionist (as defined in the Complaint) or held Zionist views. For that reason, Hasson urges the Court to recognize his Zionist beliefs as "inseparable from his Jewish race" and, thus, construe an intent to exclude him for being Zionist as an intent to exclude him on the basis of his race. But Hasson asks for too much. After all, the Complaint itself defines Zionism in a race-neutral way as "the international movement originally for the establishment of a Jewish national or religious community in Palestine and later for the support of modern Israel." Because §§ 1981 and 1982 only forbid discrimination based on race, the Complaint fails to state a claim under those statutes.

In any event, it was only after Hasson was removed from the tournament -- approximately an hour later -- that TO

Case 1:26-cv-00114-DLC Document 18 Filed 06/08/26 Page 15 of 19

Gharakhanian sent Krchmar and TO Tirrell screenshots of Hasson's messages identifying himself as Jewish, "a Zionist[,] and a proud supporter of the state of Israel." Krchmar then responded to the screenshots by stating, "Homie is definitely a Zionist weasel," echoing Mendez's original complaint. This post-hoc comment, however unsavory, does not rescue plaintiff's claim. Krchmar's statement alone does not plausibly plead that the decision to exclude Hasson (made more than an hour prior) was due to intentional race discrimination.[5]

Nor does the Complaint plead intentional discrimination by resort to the doctrine of disparate treatment. The Complaint identifies eleven individuals who made statements which Hasson construes as threatening but who were not excluded from the 2026 LMBM tournament despite Krchmar's alleged knowledge of those threatening statements.

To prevail on a § 1981 or § 1982 claim on a disparate treatment theory, "a plaintiff must allege at least one instance in which he was treated differently from a similarly situated non-minority." Hu v. City of New York, 927 F.3d 81, 101 (2d Cir. 2019). Although the plaintiff and the non-minority need

[5] This is not a case like the one cited by Hasson, in which a defendant's post hoc admission that he terminated an employee because she was "on disability" was treated on summary judgment as direct evidence of discrimination. See Porter v. Dartmouth-Hitchcock Medical Ctr., 92 F.4th 129, 150 (2d Cir. 2024).

not be "identical," the plaintiff must allege that he "was similarly situated in all material respects to the [non-minority] individuals with whom [he] seeks to compare [himself]." Id. at 96 (citation omitted).

The Complaint fails to plead disparate treatment based on race. Reactions by tournament organizers to participants' safety concerns are necessarily context-specific. Here, the allegations of disparate treatment concern a different tournament than the one from which Hasson was excluded. And, Hasson complains that others were not yet excluded from a tournament, whereas he was excluded. In addition, and as critically, the Complaint does not identify the race or ethnicity of the individuals who had registered for the 2026 LMBM tournament but who Krchmar had not excluded from the tournament as of the filing of the Complaint. The Complaint fails to plausibly plead, therefore, that Hasson's exclusion from the 2024 tournament was due to his race.

III. Section 1985

The final federal claim is brought pursuant to § 1985. Section 1985 provides a private cause of action for individuals injured by a conspiracy to deprive them of "the equal protection of the laws, or of equal privileges and immunities under the

laws." 42 U.S.C. § 1985(3). To state a conspiracy claim under § 1985(3), a plaintiff must allege:

> 1) a conspiracy;
>
> 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
>
> 3) an act in furtherance of the conspiracy;
>
> 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (citation omitted). Krchmar contends that this claim fails because the Complaint does not allege a violation of a protected right. Hasson, in his opposition, concedes that § 1985(3) only applies in cases of "conspiracy to deprive persons of their rights under the thirteenth amendment." Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 587 (2d Cir. 1988) (citing Griffin v. Breckenridge, 403 U.S. 88 (1971)). Hasson then contends that Krchmar's "racially motivated interference with one's right to enjoy places of public accommodation" constitutes a violation within the scope of § 1985(3). As already explained, however, the Complaint fails to plausibly allege that Krchmar had a racially discriminatory intent when he agreed to

exclude Hasson from the 2024 LMBM tournament. Thus, the § 1985 claim fails as well.

IV. Supplemental Jurisdiction

Having dismissed the four federal claims in the Complaint, the next issue is whether to exercise supplemental jurisdiction over the remaining state and local law claims. A district court may decline to exercise supplemental jurisdiction over a state- or local-law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Once a court has dismissed all federal claims, it must decide whether the traditional values of "economy, convenience, fairness, and comity" counsel against the exercise of supplemental jurisdiction. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018) (citation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (citation omitted). Thus, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." Whiteside v.

Hover-Davis, Inc., 995 F.3d 315, 325 (2d Cir. 2021) (citation omitted).

There is no reason to depart from the ordinary practice. The four federal claims have been dismissed and discovery has not begun. Hasson does not advance any argument why this Court should exercise supplemental jurisdiction in the event the federal claims are dismissed. Both judicial economy and comity favor dismissal.

## Conclusion

Krchmar's March 25, 2026 motion to dismiss is granted. All federal claims having been dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state and local law claims. This action is dismissed without prejudice to filing the state and local law claims in state court. The Clerk of Court shall enter judgment for the defendant on the federal claims and close the case.

Dated: New York, New York
June 8, 2026

DENISE COTE
United States District Judge